UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:13CV-00086-JHM

CHARLOTTE BRYANT												PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security									DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Charlotte Bryant ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 18) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered September 12, 2013 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance Benefits on March 27, 2010 (Tr. 47). Plaintiff alleged that she became disabled on November 19, 2009, as a result of osteoporosis, arthritis, a back fracture, and depression (Tr. 47, 218-219). Administrative Law Judge Robin Palenske ("ALJ") conducted a video hearing from Atlanta, Georgia, on June 7, 2011 (Tr. 47, 77). Plaintiff appeared in Campbellsville, Kentucky, and represented by attorney M. Gail Wilson (Tr. 47,77). Also present and testifying was Christopher Rymond as a vocational expert (Tr. 47, 75).

In a decision dated November 22, 2011, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014 (Tr. 49). The ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 49-56). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 19, 2009, the alleged onset date (Tr. 49). At the second step, the ALJ determined that Plaintiff's lumbar spine disorder, cervical spine disorder, and osteopenia are "severe" impairments within the meaning of the regulations (Tr. 49). Notably, at the second step, the ALJ also determined that Plaintiff's hyperthyroidism is a "non-severe" impairment within the meaning of the regulations because the condition is treated with medication and is stable (Tr. 49). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 49).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform less than a full range of light work because she is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; walk and stand for 6 hours in an 8 hour workday; sit for 2 hours total out of an 8 hour workday; but she can only occasionally stoop, crouch, and crawl; she is limited to

2

occasionally climbing stairs and ramps; she cannot climb ladders, ropes or scaffolds; she must avoid concentrated exposure to cold temperature extremes and work place hazards such as dangerous machinery and unprotected heights; additionally, she requires the option to sit or stand as needed and the option to change positions every 30 minutes; and, finally, she is limited to occasionally reaching overhead with the non-dominant upper extremity (Tr. 49-50). After considering the vocational expert's testimony, the ALJ concluded Plaintiff is capable of performing her past relevant work as a general office clerk (light, unskilled) because this work does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity (Tr. 54).

Alternatively, the ALJ considered whether there are other jobs that exist in the national economy that Plaintiff can perform in light of her residual functional capacity, age, education, and past work experience (Tr. 54-56). Relying on testimony from the vocational expert, the ALJ found Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 54-56). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from November 19, 2009 through the date of the decision, November 22, 2011 (Tr. 56).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 38-41). In support of her request, Plaintiff submitted medical records dated January 16, 2012 to February 27, 2012, from El-Nagger O. Amr, M.D., and medical records dated December 6, 2011 to February 8, 2012 from the Taylor Regional Hospital (Tr. 2, 5, 18-34). The Appeals Council denied Plaintiff''s request for review of the ALJ's decision (Tr. 1-4). Notably, the Appeals

Council looked at the additional medical records but concluded they are not material to Plaintiff's claim of disability through November 22, 2011, because the information is about a later time (Tr. 2).

## CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or

> medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serverices, 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Services, 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

5

Plaintiff disagrees with Finding Nos. 5, 6, and 7 (DN 15, Fact and Law Summary at Pages 4-10). Finding No. 5 sets forth the ALJ's residual functional capacity assessment (Tr. 49-50). Finding No. 6 sets forth the ALJ's determination that Plaintiff has the residual functional capacity to return to her past relevant work as a general office clerk, as the job is actually and generally performed (Tr. 54). Thus, Finding Nos. 5 and 6 pertain to the fourth step in the sequential evaluation process. Finding No. 7 sets forth the ALJ's conclusion that Plaintiff has not been under a disability, as defined in the Social Security Act, from November 19, 2009, through the date of the decision (Tr. 56).

At the fourth step in the sequential evaluation process, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity, the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to her past relevant work. See 20 C.F.R. § 404.1520(e). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. This finding is based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546. Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1527(c), 404.1529; Social Security Ruling 96-7p.

Plaintiff argues Finding No. 5 is not supported by substantial evidence in the record because the ALJ did not (1) follow the treating physician rule in assigning weight to the January 20, 2011 opinion of her treating neurosurgeon, Dr. El-Naggar; and (2) failed to give reasons for discrediting her testimony about pain (DN 15, Fact and Law Summary at Pages 4-10). Defendant

6

points out the ALJ specifically discounted Dr. El-Naggar's May 2011 conclusion that Plaintiff was totally disabled, noting it was inconsistent with the doctor's own treatment notes and other evidence in the record (DN 18, Fact and Law Summary at Pages 3-10). Defendant asserts the ALJ's findings regarding Dr. El-Naggar's opinion are supported by substantial evidence in the record and comport with the treating physician rule (DN 18, Fact and Law Summary at Pages 3-10).

While the regulations require Administrative Law Judges to evaluate every medical opinion in the record, the process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 404.1527(c). The regulations indicate that medical opinions from a treating physician must receive "controlling weight" when two conditions are met: (1) the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the medical opinion "is not inconsistent with other substantial evidence in ... [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Gayheart v. Commissioner, 710 F.3d 365, 376 (6th Cir. 2013). Notably, the Administrative Law Judge must provide "good reasons" for not giving controlling weight to a treating physician's medical opinion. Gayheart, 710 F.3d at 376-377.

If the Administrative Law Judge does not give the treating physician's medical opinion controlling weight, "then the opinion is weighed based on the length, frequency, nature, and extent of the treating relationship, ... as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. Id. (citing 20 C.F.R. § 404. 1527(c)(2)-(6)). Again, the Administrative Law Judge must provide "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p; Gayheart, 710 F.3d at 376; Wilson v.

7

Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004). Notably, "[t]hese reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Gayheart, 710 F.3d at 376 (citing Social Security Ruling 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Gayheart, 710 F.3d at 376 (quoting Wilson, 378 F.3d 544).

Included in the administrative record is a medical source statement prepared by Dr. El-Naggar that is dated January 20, 2011 (Tr. 421-425). This medical source statement sets forth diagnoses of lumbar multilevel degenerative disc disease with discogenic chronic back pain and radiculopathy in her lower extremities bilaterally; and cervical multilevel degenerative disc disease with chronic neck pain and radiculopathy in her upper extremities bilaterally (Tr. 421). Further, this medical source statement sets forth Dr. El-Naggar's opinion that Plaintiff can sit up to 30 minutes continuously and for a total of 2 hours in an 8 hour workday; she can stand up to 15 minutes continuously and for a total of 2 hours in an 8 hour workday; she can walk up to 15 minutes continuously and for a total of 2 hours in an 8 hour workday (Tr. 423). Dr. El-Naggar also indicated that in an entire 8 hour workday Plaintiff can occasionally (1% to 33%) lift and carry 6 to 10 pounds but can never lift 11 to 20 pounds; and can occasionally (1% to 33%) bend, squat, climb, and reach (Tr. 423). Additionally, Dr. El-Naggar opined that Plaintiff cannot use her hands for repetitive action such as simple grasping, pushing and pulling of arm controls, and fine manipulation (Tr. 424). Further, Dr. El-Naggar indicated that Plaintiff cannot use her legs and feet for repetitive movements, as in pushing and pulling leg or foot controls (Tr. 424). With

regard to environmental limitations, Dr. El-Naggar reported mild restrictions for unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity and exposure to dust, fumes and gases; and moderate restrictions for driving a motor vehicle and stress (Tr. 424). Further, Dr. El-Naggar commented that Plaintiff:

> [S]hould not lift, push or pull greater than 10 lbs & alternate sitting, standing & walking every 15 minutes. These are permanent restrictions.

(Tr. 424). Thus, the medical source statement sets forth the treating neurosurgeon's medical opinion regarding limitations imposed by the multilevel degenerative disc disease in Plaintiff's lumbar and cervical spine.

Additionally, on the last page of the medical source statement, Dr. El-Naggar expressed his belief that Plaintiff "should be considered totally & permanently disabled" (Tr. 425). This is a vocational opinion[1] because it goes beyond a medical judgment regarding what Plaintiff can still do and is a finding that may be dispositive of the issue of disability. Social Security Ruling 96-5p, 1996 WL 374183, *2-5 (July 2, 1996). While vocational opinions by medical sources must not be disregarded they are not entitled to controlling weight or given special significance. Id. at *5. In sum, the medical source statement prepared by Dr. El-Naggar and dated January 20, 2011, sets forth medical and vocational opinions regarding Plaintiff.

In a report dated May 26, 2011, Dr. El-Naggar expressed another opinion regarding Plaintiff (Tr. 465). Specifically, Dr. El-Nagger commented as follows:

> Due to the multiple levels of involvement with degenerative disk disease and degenerative joint disease and significant cervical spondylosis I believe the patient should be considered totally and permanently disabled. I do not believe that she can be gained [sic]

---

1 Examples of vocational opinions would be the claimant is unable to perform her past work, is limited to sedentary work, or is unable to work. Social Security Ruling 96-5p, 1996 WL 374183, *2-5 (July 2, 1996).

> fully employed. I support her application for disability. At this time the patient needs cervical epidural steroid injections and would also probably need C4-5, C5-6 and C6-7 anterior discectomy and fusion…

(Tr. 465). This is also a vocational opinion because it goes beyond a medical judgment regarding what Plaintiff can still do and is a finding that may be dispositive of the issue of disability. Social Security Ruling 96-5p, 1996 WL 374183, *2-5 (July 2, 1996).

The ALJ's decision completely overlooked the January 20, 2011, medical source statement prepared by Dr. El-Naggar (Tr. 51-54). Clearly, the ALJ's failure to assign specific weight to the treating physician's medical opinion "constitutes error." Cole v. Astrue, 661 F.3d 931, 938 (6th Cir. 2011). The procedural requirements to assign weight to the opinion of a treating source and provide "good reasons" for that weight serves both to ensure adequacy of review and to give the claimant a better understanding of the disposition of his case. Id. at 939 (citing Rogers v. Commissioner, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.' " Cole, 661 F.3d at 937.

The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted). However, a violation of these procedural requirements can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met

> the goal of § 1527(d)(2) ... even though she has not complied with
> the terms of the regulation.

Cole, 661 F.3d at 940.

Here, the undersigned does not find Dr. El-Naggard's opinions patently deficient, because the ALJ found them sufficient as to Plaintiff's diagnoses. Id. Further, the ALJ did not adopt Dr. El-Naggard's medical opinion or make residual functional capacity findings consistent with the opinion. Id. However, resolving the question of whether the ALJ has met the goal of § 404.1527 is substantially more complicated because the ALJ's decision does explain why the ALJ discredited Dr. El-Naggar's vocational opinion dated May 26, 2011 (Tr. 54).

The ALJ treated Dr. El-Naggar's vocational opinion as though it was a medical opinion (Tr. 53, 54). In pertinent part the ALJ's decision reads as follows:

> Dr. Naggar, the treating physician, concluded that the claimant was totally and permanently disabled. However, he noted in his records, that the claimant's pain was helped with medication and he even released her to return to work last year in February 2010 with restrictions (Exhibit 6F, pp.3-4). The undersigned finds that Dr. Naggar's medical opinion, while that of a treating source, is not supported by his own treatment notes and further is inconsistent with other substantial evidence.

(Tr. 54). Clearly, the ALJ did not make findings that specifically addressed both prongs of the controlling weight test (Tr. 54). 20 C.F.R. § 404.1527(c)(2); Gayheart, 710 F.3d at 376. However, the ALJ did make a general finding that is applicable to the second prong of the controlling weight test.

The undersigned is referring to the ALJ's finding that Dr. Naggar's opinion was inconsistent with his own treatment notes and other substantial evidence in the record. But Plaintiff asserts the ALJ erred in relying on Dr. Naggar's February 2010 treatment records to show

11

an inconsistency. Plaintiff argues Dr. Naggar's subsequent treatment records show deterioration or worsening of her cervical and lumbar conditions that supports the doctor's 2011 medical opinion. The undersigned observes that Dr. Naggar's treatment records from March 2010 through January 20, 2011, include findings and information that may substantiate his changed opinion regarding the severity of Plaintiff's condition (Tr. 435-442). However, the ALJ's very brief assessment of Dr. Naggar's opinion fails to address this issue.

The undersigned is also referring to the ALJ's finding that Dr. Naggar's opinion is inconsistent with "other substantial evidence" (Tr. 54). However, the ALJ does not identify the other substantial evidence that is purportedly inconsistent with Dr. Naggar's opinion (Tr. 54). Moreover, a review of the medical record and the administrative decision is no help in solving this mystery (Tr. 51-54). In sum, the undersigned concludes the ALJ failed to meet the goal of § 404.1527(c)(2). Cole, 661 F.3d at 940.

The undersigned's finding that the ALJ's decision is not supported by substantial evidence is based on the ALJ's violation of the agency's procedural rules. It may be true that, on remand, the ALJ reaches the same conclusion as to Plaintiff"'s disability while complying with the treating physician rule and the good reasons requirement. Nevertheless, Plaintiff will then be able to understand the ALJ's rationale and the procedure through which the decision was reached. Cole, 661 F.3d at 940. Therefore, the final decision of the Commissioner must be reversed and the case remanded, pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to remedy this defect in the original proceedings. Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 175 (6th Cir. 1994).

In light of the above conclusions, the undersigned deems it unnecessary to address Plaintiff's argument regarding the ALJ's credibility assessment. Additionally, the undersigned deems it unnecessary to address Plaintiff's claims regarding Finding Nos. 6 and 7.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is reversed.

**IT IS FURTHER ORDERED** that the case is remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to conduct further proceedings consistent with this memorandum opinion.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

March 28, 2014

Copies: Counsel